Get a Document - by Citation - 125 S. Ct. 2113    Page 1 of 19

Service: **Get by LEXSEE®**
Citation: **2005 U.S. LEXIS 4346**

125 S. Ct. 2113; 161 L. Ed. 2d 1020, *;
2005 U.S. LEXIS 4346, **; 73 U.S.L.W. 4397



EXHIBIT C — 18 pages

JON B. CUTTER, ET AL., PETITIONERS v. REGINALD WILKINSON, DIRECTOR, OHIO DEPARTMENT OF REHABILITATION AND CORRECTION, ET AL.

No. 03-9877

SUPREME COURT OF THE UNITED STATES

125 S. Ct. 2113; 161 L. Ed. 2d 1020; 2005 U.S. LEXIS 4346; 73 U.S.L.W. 4397; 18 Fla. L. Weekly Fed. S 317

March 21, 2005, Argued
May 31, 2005, Decided

**NOTICE:** [**1] The LEXIS pagination of this document is subject to change pending release of the final published version.

**PRIOR HISTORY:** ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT. Cutter v. Wilkinson, 349 F.3d 257, 2003 U.S. App. LEXIS 22840 (6th Cir.) (6th Cir. Ohio, 2003)

**DISPOSITION:** Reversed and remanded.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Petitioners, current and former inmates of Ohio state institutions, sought certiorari review of a judgment from the United States Court of Appeals for the Sixth Circuit, which reversed a district court ruling on interlocutory appeal and held that § 3 of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C.S. § 2000cc-1(a)(1)-(2), improperly advanced religion in violation of U.S. Const. amend. I's Establishment Clause.

**OVERVIEW:** The inmates alleged that respondent prison officials violated 42 U.S.C.S. § 2000cc-1 by failing to accommodate their exercise of nonmainstream religions in several ways. The circuit court held that the district court erred in rejecting the officials' facial challenge to § 2000cc-1 and in denying their motion to dismiss the inmates' claim. The Court reversed the circuit court's judgment. The Court held that § 2000cc-1, on its face, qualified as a permissible accommodation that was not barred by the Establishment Clause. Section 2000cc-1 was compatible with the Establishment Clause because it alleviated exceptional government-created burdens on private religious exercise. Further, § 2000cc-1 did not elevate accommodation of religious observances over an institution's need to maintain order and safety. Finally, the Court found that § 2000cc-1 did not differentiate among bona fide faiths because it conferred no privileged status on any particular religious sect. The circuit court misread the Court's precedents to require invalidation of § 2000cc-1 as impermissibly advancing religion by giving greater protection to religious rights than to other constitutionally protected rights.

**OUTCOME:** The Court reversed the judgment. The Court remanded the case for further proceedings.

**CORE TERMS:** religious, religion, accommodation, prison, prisoner, inmate, establishment, establishment of religion, compelling governmental interest, least restrictive, institutionalized, observance, chaplain, worship, prison security, correction, accommodate, federalism, secular, exercise of religion, facial challenge, regulation, interfere, enacting, national government, free exercise, constitutionally protected, greater protection, religious belief, law respecting

**LexisNexis(R) Headnotes** ◆ Hide Headnotes

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN1± Section 3, codified at 42 U.S.C.S. § 2000cc-1(a)(1)-(2), of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.S. § 2000cc et seq., provides in part that no state or local government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government shows that the burden furthers a compelling governmental interest and does so by the least restrictive means. The RLUIPA defines "religious exercise" to include any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C.S. § 2000cc-5(7)(A). 42 U.S.C.S. § 2000cc-1(a)(1)-(2) applies when the substantial burden on religious exercise is imposed in a program or activity that receives Federal financial assistance, or the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes. 42 U.S.C.S. § 2000cc-1(b)(1)-(2). A person may assert a violation of RLUIPA as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. 42 U.S.C.S. § 2000cc-2(a). More Like This Headnote

Constitutional Law > Fundamental Freedoms > Freedom of Religion > Establishment of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN2± The Religion Clauses of the First Amendment provide that Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof. The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of the Nation's people. While the two Clauses express complementary values, they often exert conflicting pressures. More Like This Headnote

Constitutional Law > Fundamental Freedoms > Freedom of Religion > Establishment of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN3± United States Supreme Court decisions recognize that there is room for play in the joints between the Establishment and Free Exercise Clauses, some space for legislative action neither compelled by the Free Exercise Clause nor prohibited by the Establishment Clause. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Establishment of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN4± Section 3, codified at 42 U.S.C.S. § 2000cc-1(a)(1)-(2), of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.S. § 2000cc et seq., fits within the corridor between the Religion Clauses of U.S. Const. amend. I. On its face, the RLUIPA qualifies as a permissible legislative accommodation of religion that is not barred by the Establishment Clause. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Establishment of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN5 ± The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.S. § 2000cc et seq., institutionalized-persons provision, 42 U.S.C.S. § 2000cc-1(a)(1)-(2), is compatible with the Establishment Clause because it alleviates exceptional government-created burdens on private religious exercise. Furthermore, § 2000cc-1(a)(1)-(2) on its face does not founder on shoals the United States Supreme Court's prior decisions have identified: Properly applying RLUIPA, courts must take adequate account of the burdens a requested accommodation may impose on non-beneficiaries, and they must be satisfied that the RLUIPA's prescriptions are and will be administered neutrally among different faiths.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN6 ± The exercise of religion often involves not only belief and profession but the performance of physical acts such as assembling with others for a worship service or participating in sacramental use of bread and wine. Section 3, codified at 42 U.S.C.S. § 2000cc-1(a)(1)-(2), of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.S. § 2000cc, covers state-run institutions--mental hospitals, prisons, and the like--in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN7 ± The United States Supreme Court does not read § 3, codified at 42 U.S.C.S. § 2000cc-1(a)(1)-(2), of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C.S. § 2000cc et seq., to elevate accommodation of religious observances over an institution's need to maintain order and safety. An accommodation must be measured so that it does not override other significant interests.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN8 ± The United States Supreme Court has no cause to believe that § 3, codified at 42 U.S.C.S. § 2000cc-1(a)(1)-(2), of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.S. § 2000cc et seq., will not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the RLUIPA adopts a compelling governmental interest standard, context matters in the application of that standard. Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. They anticipated that courts would apply the RLUIPA's standard with due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.  More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Establishment of Religion

Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN9 Section 3, codified at 42 U.S.C.S. § 2000cc-1(a)(1)-(2), of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.S. § 2000cc et seq., does not differentiate among bona fide faiths. RLUIPA confers no privileged status on any particular religious sect and singles out no bona fide faith for disadvantageous treatment. More Like This Headnote

Constitutional Law > Fundamental Freedoms > Freedom of Religion > Establishment of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN10 Religious accommodations need not come packaged with benefits to secular entities. There is no requirement that legislative protections for fundamental rights march in lockstep. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Prisoners > Freedom of Religion
Constitutional Law > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion

HN11 Prison security is a compelling state interest, and deference is due to institutional officials' expertise in this area. Further, prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic. Although 42 U.S.C.S. § 2000cc-5(7)(A) of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C.S. § 2000cc et seq., bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, the RLUIPA does not preclude inquiry into the sincerity of a prisoner's professed religiosity. The truth of a belief is not open to question; rather, the question is whether the objector's beliefs are truly held. More Like This Headnote

**SYLLABUS:** Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1(a)(1)-(2), provides in part: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." Petitioners, current and former inmates of Ohio state institutions, allege, *inter alia*, that respondent prison officials violated § 3 by failing to accommodate petitioners' exercise of their "nonmainstream" religions **[\*\*2]** in a variety of ways. Respondents moved to dismiss that claim, arguing, among other things, that § 3, on its face, improperly advances religion in violation of the First Amendment's Establishment Clause. Rejecting that argument, the District Court stated that RLUIPA permits safety and security -- undisputedly compelling state interests -- to outweigh an inmate's claim to a religious accommodation. On the thin record before it, the court could not find that enforcement of RLUIPA, inevitably, would compromise prison security. Reversing on interlocutory appeal, the Sixth Circuit held that § 3 impermissibly advances religion by giving greater protection to religious rights than to other constitutionally protected rights, and suggested that affording religious prisoners superior rights might encourage prisoners to become religious.

*Held:* Section 3 of RLUIPA, on its face, qualifies as a permissible accommodation that is not barred by the Establishment Clause. Pp. 8-16.

(a) Foremost, § 3 is compatible with the Establishment Clause because it alleviates exceptional government-created burdens on private religious exercise. See, *e.g., Board of Ed. of Kiryas Joel Village School Dist.* v. *Grumet*, 512 U.S. 687, 705, 129 L. Ed. 2d 546, 114 S. Ct. 2481. **[\*\*3]** Furthermore, the Act on its face does not founder on shoals the Court's prior decisions have identified: Properly applying RLUIPA, courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries, see *Estate of Thornton* v. *Caldor, Inc.*, 472 U.S. 703, 86 L. Ed. 2d 557, 105 S. Ct. 2914; and they must be

satisfied that the Act's prescriptions are and will be administered neutrally among different faiths, see _Board of Educ. of Kiryas Joel Village School Dist. v. Grumet,_ 512 U.S. 687, 129 L. Ed. 2d 546, 114 S. Ct. 2481 (1994). "The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." _Employment Div., Dept. of Human Resources of Ore._ v. _Smith,_ 494 U.S. 872, 877, 108 L. Ed. 2d 876, 110 S. Ct. 1595. Section 3 covers state-run institutions -- mental hospitals, prisons, and the like -- in which the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. 42 U.S.C. § 2000cc-1(a); § 1997. RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious [**4] needs and are therefore dependent on the government's permission and accommodation for exercise of their religion. But the Act does not elevate accommodation of religious observances over an institution's need to maintain order and safety. An accommodation must be measured so that it does not override other significant interests. See _Caldor,_ 472 U.S., at 709-710, 86 L. Ed. 2d 557, 105 S. Ct. 2914. There is no reason to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling interest" standard, § 2000cc-1(a), "context matters" in the application of that standard, see _Grutter_ v. _Bollinger,_ 539 U.S. 306, 327, 156 L. Ed. 2d 304, 123 S. Ct. 2325. Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions and anticipated that courts would apply the Act's standard with due deference to prison administrators' experience and expertise. Finally, RLUIPA does not differentiate among bona fide faiths. It confers no privileged status on any particular religious sect. Cf. _Board of Ed. of Kiryas Joel School Dist.,_ 512 U.S., at 706, 129 L. Ed. 2d 546, 114 S. Ct. 2481. Pp. 8-13.

(b) The Sixth Circuit misread this [**5] Court's precedents to require invalidation of RLUIPA as impermissibly advancing religion by giving greater protection to religious rights than to other constitutionally protected rights. _Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints_ v. _Amos,_ 483 U.S. 327, 97 L. Ed. 2d 273, 107 S. Ct. 2862, counsels otherwise. There, in upholding against an Establishment Clause challenge a provision exempting religious organizations from the prohibition against religion-based employment discrimination in Title VII of the Civil Rights Act of 1964, the Court held that religious accommodations need not "come packaged with benefits to secular entities." _Id.,_ at 338, 97 L. Ed. 2d 273, 107 S. Ct. 2862. Were the Court of Appeals' view correct, all manner of religious accommodations would fall. For example, Ohio could not, as it now does, accommodate traditionally recognized religions by providing chaplains and allowing worship services. In upholding § 3, the Court emphasizes that respondents have raised a facial challenge and have not contended that applying RLUIPA would produce unconstitutional results in any specific case. There is no reason to anticipate that abusive prisoner litigation will overburden [**6] state and local institutions. However, should inmate requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize an institution's effective functioning, the facility would be free to resist the imposition. In that event, adjudication in as-applied challenges would be in order. Pp. 13-16.

349 F.3d 257, reversed and remanded.

**JUDGES:** GINSBURG, J., delivered the opinion for a unanimous Court. THOMAS, J., filed a concurring opinion.

**OPINIONBY:** GINSBURG

**OPINION:** [*1028] JUSTICE GINSBURG delivered the opinion of the Court.

Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 114 Stat. 804, 42 U.S.C. § 2000cc-1(a)(1)-(2), provides in part: "No government shall impose a

substantial burden on the religious exercise of a person residing in or confined to an institution," unless the burden furthers "a compelling governmental interest," and does so by "the least restrictive means." Plaintiffs below, petitioners here, are current and former inmates of institutions operated by the Ohio Department of Rehabilitation and Correction and assert that they are adherents of [**7] "nonmainstream" religions: the Satanist, Wicca, and Asatru religions, and the Church of Jesus Christ Christian. n1 They complain that Ohio prison officials (respondents here), in violation of RLUIPA, have failed to accommodate their religious exercise

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Petitioners Cutter and Gerhardt are no longer in the custody of the Ohio Department of Rehabilitation and Correction. Brief for Petitioners 2, n. 1. No party has suggested that this case has become moot, nor has it: Without doubt, a live controversy remains among the still-incarcerated petitioners, the United States, and respondents. We do not reach the question whether the claims of Cutter and Gerhardt continue to present an actual controversy. See _Steffel_ v. _Thompson,_ 415 U.S. 452, 459-460, 39 L. Ed. 2d 505, 94 S. Ct. 1209, and n. 10 (1974).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

"in a variety of different ways, including retaliating and discriminating against them for exercising their nontraditional faiths, denying them access to religious literature, denying them the same opportunities for group worship that [**8] are granted to adherents of mainstream religions, forbidding them to adhere to the dress and appearance mandates of their religions, withholding religious ceremonial items that are substantially identical [*1029] to those that the adherents of mainstream religions are permitted, and failing to provide a chaplain trained in their faith." Brief for United States 5.

For purposes of this litigation at its current stage, respondents have stipulated that petitioners are members of bona fide religions and that they are sincere in their beliefs. _Gerhardt_ v. _Lazaroff,_ 221 F. Supp. 2d 827, 833 (SD Ohio 2002).

In response to petitioners' complaints, respondent prison officials have mounted a facial challenge to the institutionalized-persons provision of RLUIPA; respondents contend, _inter alia_, that the Act improperly advances religion in violation of the First Amendment's Establishment Clause. The District Court denied respondents' motion to dismiss petitioners' complaints, but the Court of Appeals reversed that determination. The appeals court held, as the prison officials urged, that the portion of RLUIPA applicable to institutionalized persons, 42 U.S.C. § 2000cc-1, [**9] violates the Establishment Clause. We reverse the Court of Appeals' judgment.

"This Court has long recognized that the government may . . . accommodate religious practices . . . without violating the Establishment Clause." _Hobbie_ v. _Unemployment Appeals Comm'n of Fla.,_ 480 U.S. 136, 144-145, 94 L. Ed. 2d 190, 107 S. Ct. 1046 (1987). Just last Term, in _Locke_ v. _Davey,_ 540 U.S. 712, 158 L. Ed. 2d 1, 124 S. Ct. 1307 (2004), the Court reaffirmed that "there is room for play in the joints between" the Free Exercise and Establishment Clauses, allowing the government to accommodate religion beyond free exercise requirements, without offense to the Establishment Clause. _Id., at 718,_ 158 L. Ed. 2d 1, 124 S. Ct. 1307 (quoting _Walz_ v. _Tax Comm'n of City of New York,_ 397 U.S. 664, 669, 25 L. Ed. 2d 697, 90 S. Ct. 1409 (1970)). "At some point, accommodation may devolve into 'an unlawful fostering of religion.'" _Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints_ v. _Amos,_ 483 U.S. 327, 334-335, 97 L. Ed. 2d 273, 107 S. Ct. 2862 (1987) (quoting _Hobbie,_ 480 U.S., at 145, 94 L. Ed. 2d 190, 107 S. Ct. 1046). But § 3 of

RLUIPA, we hold, does not, on its face, exceed the limits of permissible government accommodation of religious practices.

I

A

RLUIPA is the [**10] latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with this Court's precedents. Ten years before RLUIPA's enactment, the Court held, in *Employment Div., Dept. of Human Resources of Ore.* v. *Smith*, 494 U.S. 872, 878-882, 108 L. Ed. 2d 876, 110 S. Ct. 1595 (1990), that the First Amendment's Free Exercise Clause does not inhibit enforcement of otherwise valid laws of general application that incidentally burden religious conduct. In particular, we ruled that the Free Exercise Clause did not bar Oregon from enforcing its blanket ban on peyote possession with no allowance for sacramental use of the drug. Accordingly, the State could deny unemployment benefits to persons dismissed from their jobs because of their religiously inspired peyote use. *Id.*, at 874, 890, 108 L. Ed. 2d 876, 110 S. Ct. 1595. The Court recognized, however, that the political [*1030] branches could shield religious exercise through legislative accommodation, for example, by making an exception to proscriptive drug laws for sacramental peyote use. *Id.*, at 890, 108 L. Ed. 2d 876, 110 S. Ct. 1595.

Responding to *Smith*, Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA), [**11] 107 Stat. 1488, 42 U.S.C. § 2000bb *et seq.* RFRA "prohibits 'government' from 'substantially burdening' a person's exercise of religion even if the burden results from a rule of general applicability unless the government can demonstrate the burden '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *City of Boerne* v. *Flores*, 521 U.S. 507, 515-516, 138 L. Ed. 2d 624, 117 S. Ct. 2157 (1997) (brackets in original) (quoting § 2000bb-1). "Universal" in its coverage, RFRA "applied to all Federal and State law," *id.*, at 516, 138 L. Ed. 2d 624, 117 S. Ct. 2157 (quoting former § 2000bb-3(a)), but notably lacked a Commerce Clause underpinning or a Spending Clause limitation to recipients of federal funds. In *City of Boerne*, this Court invalidated RFRA as applied to States and their subdivisions, holding that the Act exceeded Congress' remedial powers under the Fourteenth Amendment. *Id.*, at 532-536, 138 L. Ed. 2d 624, 117 S. Ct. 2157. n2

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 RFRA, Courts of Appeals have held, remains operative as to the Federal Government and federal territories and possessions. See *O'Bryan* v. *Bureau of Prisons*, 349 F.3d 399, 400-401 (CA7 2003); *Guam* v. *Guerrero*, 290 F.3d 1210, 1220-1222 (CA9 2002); *Kikumura* v. *Hurley*, 242 F.3d 950, 958-960 (CA10 2001); *In re Young*, 141 F.3d 854, 858-863 (CA8 1998). This Court, however, has not had occasion to rule on the matter.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**12]

Congress again responded, this time by enacting RLUIPA. Less sweeping than RFRA, and invoking federal authority under the Spending and Commerce Clauses, RLUIPA targets two areas: Section 2 of the Act concerns land-use regulation, 42 U.S.C. § 2000cc; n3 § 3 relates to religious exercise by institutionalized persons, § 2000cc-1. *HN1* Section 3, at issue here, provides that "no [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution," unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." § 2000cc-1(a)(1)-(2). The Act defines "religious exercise" to include

"any exercise of religion, whether or not compelled by, or central to, a system of religious belief." § 2000cc-5(7)(A). Section 3 applies when "the substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance," n4 or "the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes. [**13] " § 2000cc-1(b)(1)-(2). "A person may assert a violation of [RLUIPA] as a claim or defense in a judicial proceeding [*1031] and obtain appropriate relief against a government." § 2000cc-2(a).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Section 2 of RLUIPA is not at issue here. We therefore express no view on the validity of that part of the Act.

n4 Every State, including Ohio, accepts federal funding for its prisons. Brief for United States 28, n. 16 (citing FY 2003 Office of Justice Programs & Office of Community Oriented Policing Services Grants by State).

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - -

Before enacting § 3, Congress documented, in hearings spanning three years, that "frivolous or arbitrary" barriers impeded institutionalized persons' religious exercise. See 146 Cong. Rec. S7774, S7775 (July 27, 2000) (joint statement of Senator Hatch and Senator Kennedy on RLUIPA) (hereinafter Joint Statement) ("Whether from indifference, ignorance, bigotry, or lack of resources, some institutions restrict religious liberty in egregious and unnecessary ways."). n5 To secure redress for inmates [**14] who encountered undue barriers to their religious observances, Congress carried over from RFRA the "compelling governmental interest"/"least restrictive means" standard. See *id.*, at S7774. Lawmakers anticipated, however, that courts entertaining complaints under § 3 would accord "due deference to the experience and expertise of prison and jail administrators." *Id.*, at S7775 (quoting S. Rep. No. 103-111, p. 10 (1993)).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 The hearings held by Congress revealed, for a typical example, that "[a] state prison in Ohio refused to provide Moslems with Hallal food, even though it provided Kosher food." Hearing on Protecting Religious Freedom After *Boerne* v. *Flores*, before the Subcommittee on the Constitution of the House Committee on the Judiciary, 105th Cong., 2d Sess., pt. 3, p. 11, n. 1 (1998) (hereinafter Protecting Religious Freedom) (prepared statement of Marc D. Stern, Legal Director, American Jewish Congress). Across the country, Jewish inmates complained that prison officials refused to provide sack lunches, which would enable inmates to break their fasts after nightfall. *Id.*, at 39 (statement of Isaac M. Jaroslawicz, Director of Legal Affairs for the Aleph Institute). The "Michigan Department of Corrections . . . prohibited the lighting of Chanukah candles at all state prisons" even though "smoking" and "votive candles" were permitted. *Id.*, at 41 (same). A priest responsible for communications between Roman Catholic dioceses and corrections facilities in Oklahoma stated that there "was [a] nearly yearly battle over the Catholic use of Sacramental Wine . . . for the celebration of the Mass," and that prisoners' religious possessions, "such as the Bible, the Koran, the Talmud or items needed by Native Americans[,] . . . were frequently treated with contempt and were confiscated, damaged or discarded" by prison officials. *Id.*, pt. 2, at 58-59 (prepared statement of Donald W. Brooks, Reverend, Diocese of Tulsa, Oklahoma).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**15]

B

Petitioners initially filed suit against respondents asserting claims under the First and Fourteenth Amendments. After RLUIPA's enactment, petitioners amended their complaints to include claims under § 3. Respondents moved to dismiss the statutory claims, arguing, inter alia, that § 3 violates the Establishment Clause. 221 F. Supp. 2d, at 846. Pursuant to 28 U.S.C. § 2403(a), the United States intervened in the District Court to defend RLUIPA's constitutionality. 349 F.3d 257, 261 (CA6 2003).

Adopting the report and recommendation of the Magistrate Judge, the District Court rejected the argument that § 3 conflicts with the Establishment Clause. 221 F. Supp. 2d, at 846-848. As to the Act's impact on a prison's staff and general inmate population, the court stated that RLUIPA "permits safety and security -- which are undisputedly compelling state interests -- to outweigh an inmate's claim to a religious accommodation." Id., at 848. On the thin record before it, the court declined to find, as respondents had urged, that enforcement of RLUIPA, inevitably, would compromise prison security. Ibid. [**16]

On interlocutory appeal pursuant to 28 U.S.C. § 1292(b), [*1032] the Court of Appeals for the Sixth Circuit reversed. Citing Lemon v. Kurtzman, 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971), n6 the Court of Appeals held that § 3 of RLUIPA "impermissibly advances religion by giving greater protection to religious rights than to other constitutionally protected rights." 349 F.3d at 264. Affording "religious prisoners rights superior to those of nonreligious prisoners," the court suggested, might "encourage prisoners to become religious in order to enjoy greater rights." Id., at 266.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Lemon stated a three-part test: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster an excessive government entanglement with religion." 403 U.S., at 612-613, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (citations and internal quotation marks omitted). We resolve this case on other grounds.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**17]

We granted certiorari to resolve the conflict among Courts of Appeals on the question whether RLUIPA's institutionalized-persons provision, § 3 of the Act, is consistent with the Establishment Clause of the First Amendment. 543 U.S. ___, 160 L. Ed. 2d 221, 125 S. Ct. 308 (2004). n7 Compare 349 F.3d 257, with Madison v. Riter, 355 F.3d 310, 313 (CA4 2003) ( § 3 of RLUIPA does not violate the Establishment Clause); Charles v. Verhagen, 348 F.3d 601, 610-611 (CA7 2003) (same); Mayweathers v. Newland, 314 F.3d 1062, 1068-1069 (CA9 2002) (same). We now reverse the judgment of the Court of Appeals for the Sixth Circuit.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Respondents argued below that RLUIPA exceeds Congress' legislative powers under the Spending and Commerce Clauses and violates the Tenth Amendment. The District Court rejected respondents' challenges under the Spending Clause, Gerhardt v. Lazaroff, 221 F. Supp. 2d 827, 839-849 (SD Ohio 2002), and the Tenth Amendment, id., at 850-851, and

declined to reach the Commerce Clause question, *id.*, at 838-839. The Sixth Circuit, having determined that RLUIPA violates the Establishment Clause, did not rule on respondents' further arguments. See 349 F.3d 257, 259-260, 269 (2003). Respondents renew those arguments in this Court. They also augment their federalism-based or residual-powers contentions by asserting that, in the space between the Free Exercise and Establishment Clauses, the States' choices are not subject to congressional oversight. See Brief for Respondents 9, 25-33; cf. *Madison* v. *Riter*, 355 F.3d 310, 322 (CA4 2003). Because these defensive pleas were not addressed by the Court of Appeals, and mindful that we are a court of review, not of first view, we do not consider them here. See *F. Hoffmann-La Roche Ltd* v. *Empagran S. A.*, 542 U.S. 155, 175, 159 L. Ed. 2d 226, 124 S. Ct. 2359 (2004); *United States* v. *Oakland Cannabis Buyers' Cooperative*, 532 U.S. 483, 494, 149 L. Ed. 2d 722, 121 S. Ct. 1711 (2001). But cf. *post*, at 1-2, n. 2 (THOMAS, J., concurring).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**18]

II

A

HN2⚓The Religion Clauses of the First Amendment provide: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The first of the two Clauses, commonly called the Establishment Clause, commands a separation of church and state. The second, the Free Exercise Clause, requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people. While the two Clauses express complementary values, they often exert conflicting pressures. See *Locke,* 540 U.S., at 718, 158 L. Ed. 2d 1, 124 S. Ct. 1307 ("These two Clauses . . . are frequently in tension."); *Walz,* 397 U.S., at 668-669, 25 L. Ed. 2d 697, 90 S. Ct. 1409 ("The Court has struggled to find a neutral course between the two Religion Clauses, both of which are cast in absolute [*1033] terms, and either of which, if expanded to a logical extreme, would tend to clash with the other.").

HN3⚓Our decisions recognize that "there is room for play in the joints" between the Clauses, *id.*, at 669, 25 L. Ed. 2d 697, 90 S. Ct. 1409, some space for legislative action neither compelled by the Free Exercise Clause nor prohibited by the Establishment Clause. See, *e.g.*, *Smith,* 494 U.S., at 890, 108 L. Ed. 2d 876, 110 S. Ct. 1595 [**19] ("[A] society that believes in the negative protection accorded to religious belief can be expected to be solicitous of that value in its legislation . . . ."); *Amos,* 483 U.S., at 329-330, 97 L. Ed. 2d 273, 107 S. Ct. 2862 (Federal Government may exempt secular nonprofit activities of religious organizations from Title VII's prohibition on religious discrimination in employment); *Sherbert* v. *Verner*, 374 U.S. 398, 422, 10 L. Ed. 2d 965, 83 S. Ct. 1790 (1963) (Harlan, J., dissenting) ("The constitutional obligation of 'neutrality' is not so narrow a channel that the slightest deviation from an absolutely straight course leads to condemnation." (citation omitted)). In accord with the majority of Courts of Appeals that have ruled on the question, see *supra*, at 7-8, we hold that HN4⚓§ 3 of RLUIPA fits within the corridor between the Religion Clauses: On its face, the Act qualifies as a permissible legislative accommodation of religion that is not barred by the Establishment Clause.

Foremost, we find HN5⚓RLUIPA's institutionalized-persons provision compatible with the Establishment Clause because it alleviates exceptional government-created burdens on private religious exercise. See *Board of Ed. of Kiryas Joel Village School Dist.* v. *Grumet,* 512 U.S. 687, 705, 129 L. Ed. 2d 546, 114 S. Ct. 2481 (1994) [**20] (government need not "be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice"); *Amos,* 483 U.S., at 349, 97 L. Ed. 2d 273, 107 S. Ct. 2862 (O'CONNOR, J., concurring in judgment) (removal of government-imposed burdens on religious exercise is

more likely to be perceived "as an accommodation of the exercise of religion rather than as a Government endorsement of religion"). Furthermore, the Act on its face does not founder on shoals our prior decisions have identified: Properly applying RLUIPA, courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries, see *Estate of Thornton* v. *Caldor, Inc., 472 U.S. 703, 86 L. Ed. 2d 557, 105 S. Ct. 2914 (1985)*; and they must be satisfied that the Act's prescriptions are and will be administered neutrally among different faiths, see *Bd. of Ed. of Kiryas Joel School Dist. v. Grumet , 512 U.S. 687, 129 L. Ed. 2d 546, 114 S. Ct. 2481 (1994)*. n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 Directed at obstructions institutional arrangements place on religious observances, RLUIPA does not require a State to pay for an inmate's devotional accessories. See, *e.g.*, *Charles* v. *Verhagen, 348 F.3d 601, 605 (CA7 2003)* (overturning prohibition on possession of Islamic prayer oil but leaving inmate-plaintiff with responsibility for purchasing the oil).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**21]

HN6 "The 'exercise of religion' often involves not only belief and profession but the performance of . . . physical acts [such as] assembling with others for a worship service [or] participating in sacramental use of bread and wine . . . ." *Smith, 494 U.S., at 877, 108 L. Ed. 2d 876, 110 S. Ct. 1595*. Section 3 covers state-run institutions -- mental hospitals, prisons, and the like -- in which [*1034] the government exerts a degree of control unparalleled in civilian society and severely disabling to private religious exercise. 42 U.S.C. § 2000cc-1(a); § 1997; see Joint Statement S7775 ("Institutional residents' right to practice their faith is at the mercy of those running the institution."). n9 RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion. n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 See, *e.g.*, *ibid.* (prison's regulation prohibited Muslim prisoner from possessing ritual cleansing oil); *Young* v. *Lane, 922 F.2d 370, 375-376 (CA7 1991)* (prison's regulation restricted wearing of yarmulkes); *Hunafa* v. *Murphy, 907 F.2d 46, 47-48 (CA7 1990)* (noting instances in which Jewish and Muslim prisoners were served pork, with no substitute available). [**22]

n10 Respondents argue, in line with the Sixth Circuit, that RLUIPA goes beyond permissible reduction of impediments to free exercise. The Act, they project, advances religion by encouraging prisoners to "get religion," and thereby gain accommodations afforded under RLUIPA. Brief for Respondents 15-17; see *349 F.3d at 266* ("One effect of RLUIPA is to induce prisoners to adopt or feign religious belief in order to receive the statute's benefits."). While some accommodations of religious observance, notably the opportunity to assemble in worship services, might attract joiners seeking a break in their closely guarded day, we doubt that all accommodations would be perceived as "benefits." For example, congressional hearings on RLUIPA revealed that one state corrections system served as its kosher diet "a fruit, a vegetable, a granola bar, and a liquid nutritional supplement -- each and every meal." Protecting Religious Freedom, pt. 3, at 38 (statement of Jaroslawicz).

The argument, in any event, founders on the fact that Ohio already facilitates religious services for mainstream faiths. The State provides chaplains, allows inmates to possess

religious items, and permits assembly for worship. See App. 199 (affidavit of David Schwarz, Religious Services Administrator for the South Region of the Ohio Dept. of Rehabilitation and Correction (Oct. 19, 2000)) (job duties include "facilitating the delivery of religious services in 14 correctional institutions of various security levels throughout . . . Ohio"); Ohio Dept. of Rehabilitation and Correction, Table of Organization, available at http://www.drc.state.oh.us/web/DRCORG1.pdf (department includes "Religious Services" division) (as visited May 27, 2005, and available in Clerk of Court's case file); Brief for United States 20, and n. 8 (citing, inter alia, Gawloski v. Dallman, 803 F. Supp. 103, 113 (SD Ohio 1992) (inmate in protective custody allowed to attend a congregational religious service, possess a Bible and other religious materials, and receive chaplain visits); Taylor v. Perini, 413 F. Supp. 189, 238 (ND Ohio 1976) (institutional chaplains had free access to correctional area)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**23]

We note in this regard the Federal Government's accommodation of religious practice by members of the military. See, e.g., 10 U.S.C. § 3073 (referring to Army chaplains); Katcoff v. Marsh, 755 F.2d 223, 225-229 (CA2 1985) (describing the Army chaplaincy program). In Goldman v. Weinberger, 475 U.S. 503, 89 L. Ed. 2d 478, 106 S. Ct. 1310 (1986), we held that the Free Exercise Clause did not require the Air Force to exempt an Orthodox Jewish officer from uniform dress regulations so that he could wear a yarmulke indoors. In a military community, the Court observed, "there is simply not the same [individual] autonomy as there is in the larger civilian community." Id., at 507, 89 L. Ed. 2d 478, 106 S. Ct. 1310 (brackets in original; internal quotation marks omitted). Congress responded to Goldman by prescribing that "a member of the armed forces may wear an item of religious apparel while wearing the uniform," unless "the wearing of the item would interfere with the performance [of] military duties [or] the item of apparel is not neat and conservative." 10 U.S.C. § 774 (a)-(b).

HN7 We do not read RLUIPA to elevate [*1035] accommodation of religious [**24] observances over an institution's need to maintain order and safety. Our decisions indicate that an accommodation must be measured so that it does not override other significant interests. In Caldor, the Court struck down a Connecticut law that "armed Sabbath observers with an absolute and unqualified right not to work on whatever day they designated as their Sabbath." 472 U.S., at 709, 86 L. Ed. 2d 557, 105 S. Ct. 2914. We held the law invalid under the Establishment Clause because it "unyieldingly weighted" the interests of Sabbatarians "over all other interests." Id., at 710, 86 L. Ed. 2d 557, 105 S. Ct. 2914.

HN8 We have no cause to believe that RLUIPA would not be applied in an appropriately balanced way, with particular sensitivity to security concerns. While the Act adopts a "compelling governmental interest" standard, see supra, at 5, "context matters" in the application of that standard. See Grutter v. Bollinger, 539 U.S. 306, 327, 156 L. Ed. 2d 304, 123 S. Ct. 2325 (2003). n11 Lawmakers supporting RLUIPA were mindful of the urgency of discipline, order, safety, and security in penal institutions. See, e.g., 139 Cong. Rec. 26190 (1993) (remarks of Senator Hatch). They anticipated that courts would apply the Act's standard [**25] with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Joint Statement S7775 (quoting S. Rep. No. 103-111, p. 10 (1993)). n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 The Sixth Circuit posited that an irreligious prisoner and member of the Aryan Nation who challenges prison officials' confiscation of his white supremacist literature as a violation

of his free association and expression rights would have his claims evaluated under the deferential rational-relationship standard described in *Turner* v. *Safley,* 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987). A member of the Church of Jesus Christ Christian challenging a similar withholding, the Sixth Circuit assumed, would have a stronger prospect of success because a court would review his claim under RLUIPA's compelling-interest standard. 349 F.3d at 266 (citing *Madison* v. *Riter,* 240 F. Supp. 2d 566, 576 (WD Va. 2003)). Courts, however, may be expected to recognize the government's countervailing compelling interest in not facilitating inflammatory racist activity that could imperil prison security and order. Cf. *Reimann* v. *Murphy,* 897 F. Supp. 398, 402-403 (ED Wis. 1995) (concluding, under RFRA, that excluding racist literature advocating violence was the least restrictive means of furthering the compelling state interest in preventing prison violence); *George* v. *Sullivan,* 896 F. Supp. 895, 898 (WD Wis. 1995) (same). [**26]

n12 State prison officials make the first judgment about whether to provide a particular accommodation, for a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies. See 42 U.S.C. § 2000cc-2(e) (nothing in RLUIPA "shall be construed to amend or repeal the Prison Litigation Reform Act of 1995"); § 1997e(a) (requiring exhaustion of administrative remedies).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Finally, *HN9* RLUIPA does not differentiate among bona fide faiths. In *Kiryas Joel,* we invalidated a state law that carved out a separate school district to serve exclusively a community of highly religious Jews, the Satmar Hasidim. We held that the law violated the Establishment Clause, 512 U.S., at 690, 129 L. Ed. 2d 546, 114 S. Ct. 2481, in part because it "singled out a particular religious sect for special treatment," *id.,* at 706, 129 L. Ed. 2d 546, 114 S. Ct. 2481 (footnote omitted). RLUIPA presents no such defect. It confers no privileged [*1036] status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment.

B

The Sixth Circuit misread our precedents to require invalidation [**27] of RLUIPA as "impermissibly advancing religion by giving greater protection to religious rights than to other constitutionally protected rights." 349 F.3d at 264. Our decision in *Amos* counsels otherwise. There, we upheld against an Establishment Clause challenge a provision exempting "religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion." 483 U.S., at 329, 97 L. Ed. 2d 273, 107 S. Ct. 2862. The District Court in *Amos,* reasoning in part that the exemption improperly "singled out religious entities for a benefit," *id.,* at 338, 97 L. Ed. 2d 273, 107 S. Ct. 2862, had "declared the statute unconstitutional as applied to secular activity," *id.,* at 333, 97 L. Ed. 2d 273, 107 S. Ct. 2862. *HN10* Religious accommodations, we held, need not "come packaged with benefits to secular entities." *Id.,* at 338, 97 L. Ed. 2d 273, 107 S. Ct. 2862; see *Madison,* 355 F.3d at 318 ("There is no requirement that legislative protections for fundamental rights march in lockstep.").

Were the Court of Appeals' view the correct reading of our decisions, all manner of religious accommodations would fall. Congressional permission for members of the military to wear religious apparel while in uniform [**28] would fail, see 10 U.S.C. § 774, as would accommodations Ohio itself makes. Ohio could not, as it now does, accommodate "traditionally recognized" religions, 221 F. Supp. 2d, at 832: The State provides inmates with chaplains "but not with publicists or political consultants," and allows "prisoners to assemble for worship, but not for political rallies." Reply Brief for United States 5.

In upholding RLUIPA's institutionalized-persons provision, we emphasize that respondents "have raised a facial challenge to [the Act's] constitutionality, and have not contended that under the facts of any of [petitioners'] specific cases . . . [that] applying RLUIPA would produce unconstitutional results." 221 F. Supp. 2d, at 831. The District Court, noting the underdeveloped state of the record, concluded: A finding "that it is *factually impossible* to provide the kind of accommodations that RLUIPA will require without significantly compromising prison security or the levels of service provided to other inmates" cannot be made at this juncture. *Id., at 848* (emphasis added). n13 We agree.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 Respondents argue that prison gangs use religious activity to cloak their illicit and often violent conduct. The instant case was considered below on a motion to dismiss. Thus, the parties' conflicting assertions on this matter are not before us. It bears repetition, however, that HN11⨯prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area. See *supra*, at 12-13. Further, prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic. Although RLUIPA bars inquiry into whether a particular belief or practice is "central" to a prisoner's religion, see 42 U.S.C. § 2000cc-5(7)(A), the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity. Cf. *Gillette v. United States,* 401 U.S. 437, 457, 28 L. Ed. 2d 168, 91 S. Ct. 828 (1971) ("'The "truth" of a belief is not open to question'; rather, the question is whether the objector's beliefs are 'truly held.'" (quoting *United States v. Seeger,* 380 U.S. 163, 185, 13 L. Ed. 2d 733, 85 S. Ct. 850 (1965))).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**29]

"For more than a [*1037] decade, the federal Bureau of Prisons has managed the largest correctional system in the Nation under the same heightened scrutiny standard as RLUIPA without compromising prison security, public safety, or the constitutional rights of other prisoners." Brief for United States 24 (citation omitted). The Congress that enacted RLUIPA was aware of the Bureau's experience. See Joint Statement S7776 (letter from Department of Justice to Senator Hatch) ("We do not believe [RLUIPA] would have an unreasonable impact on prison operations. RFRA has been in effect in the Federal prison system for six years and compliance with that statute has not been an unreasonable burden to the Federal prison system."). We see no reason to anticipate that abusive prisoner litigation will overburden the operations of state and local institutions. The procedures mandated by the Prison Litigation Reform Act of 1995, we note, are designed to inhibit frivolous filings. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 See *supra*, at 13, n. 12.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

Should inmate [**30] requests for religious accommodations become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the facility would be free to resist the imposition. In that event, adjudication in as-applied challenges would be in order.

\* \* \*

For the reasons stated, the judgment of the United States Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

**CONCURBY:** THOMAS

**CONCUR:** JUSTICE THOMAS, concurring.

I join the opinion of the Court. I agree with the Court that the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA) is constitutional under our modern Establishment Clause case law. n1 I write to explain why a proper historical [*1038] understanding of the Clause as a federalism provision leads to the same conclusion. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Court properly declines to assess RLUIPA under the discredited test of Lemon v. Kurtzman, 403 U.S. 602, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (1971), which the Court of Appeals applied below, 349 F.3d 257, 262-268 (CA6 2003). Lemon held that, to avoid invalidation under the Establishment Clause, a statute "must have a secular legislative purpose," "its principal or primary effect must be one that neither advances nor inhibits religion," and it "must not foster an excessive government entanglement with religion." 403 U.S., at 612-613, 29 L. Ed. 2d 745, 91 S. Ct. 2105 (internal quotation marks and citation omitted). Under the first and second prongs, RLUIPA -- and, indeed, any accommodation of religion -- might well violate the Clause. Even laws *disestablishing* religion might violate the Clause. Disestablishment might easily have a religious purpose and thereby flunk the first prong, or it might well "strengthen and revitalize" religion and so fail the second. McConnell, Establishment and Disestablishment at the Founding, Part I: Establishment of Religion, 44 Wm. & Mary L. Rev. 2105, 2206-2207 (2003) (hereinafter McConnell). [**31]

n2 The Court dismisses the parties' arguments about the federalism aspect of the Clause with the brief observation that the Court of Appeals did not address the issue. *Ante,* at 7-8, n. 7. The parties' contentions on this point, however, are fairly included in the question presented, which asks "whether Congress violated the Establishment Clause by enacting [RLUIPA]." Pet. for Cert. i. Further, both parties have briefed the federalism understanding of the Clause, Brief for Respondents 25-33; Reply Brief for Petitioners 12-16, and neither suggests that a remand on it would be useful or that the record in this Court lacks relevant facts, Good News Club v. Milford Central School, 533 U.S. 98, 119, n. 9, 150 L. Ed. 2d 151, 121 S. Ct. 2093 (2001).

Also, though RLUIPA is entirely consonant with the Establishment Clause, it may well exceed Congress' authority under either the Spending Clause or the Commerce Clause. See **Sabri** v. *United States,* 541 U.S. 600, 613, 158 L. Ed. 2d 891, 124 S. Ct. 1941 (2004) (THOMAS, J., concurring in judgment) (for a spending clause condition on a State's receipt of funds to be "Necessary and Proper" to the expenditure of the funds, there must be "some obvious, simple, and direct relation" between the condition and the expenditure of the funds); United States v. Lopez, 514 U.S. 549, 587, 131 L. Ed. 2d 626, 115 S. Ct. 1624 (1995) (THOMAS, J., concurring) ("The Constitution not only uses the word 'commerce' in a narrower sense than our case law might suggest, it also does not support the proposition that Congress has authority over all activities that 'substantially affect' interstate commerce"). The Court, however, properly declines to reach those issues, since they are outside the question

presented and were not addressed by the Court of Appeals.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - [**32]

I

The Establishment Clause provides that "Congress shall make no law respecting an establishment of religion." Amdt. 1. As I have explained, an important function of the Clause was to "make clear that Congress could not interfere with state establishments." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 50, 159 L. Ed. 2d 98, 124 S. Ct. 2301 (2004) (opinion concurring in judgment). The Clause, then, "is best understood as a federalism provision" that "protects state establishments from federal interference." Ibid.; see also Zelman v. Simmons-Harris, 536 U.S. 639, 677-680, 153 L. Ed. 2d 604, 122 S. Ct. 2460 (2002) (THOMAS, J., concurring); Lee v. Weisman, 505 U.S. 577, 641, 120 L. Ed. 2d 467, 112 S. Ct. 2649 (1992) (SCALIA, J., dissenting). Ohio contends that this federalism understanding of the Clause prevents federal oversight of state choices within the "'play in the joints'" between the Free Exercise and Establishment Clauses. Locke v. Davey, 540 U.S. 712, 718-719, 158 L. Ed. 2d 1, 124 S. Ct. 1307 (2004). In other words, Ohio asserts that the Clause protects the States from federal interference with otherwise constitutionally permissible choices regarding religious policy. In Ohio's view, RLUIPA intrudes on such state policy [**33] choices and hence violates the Clause.

Ohio's vision of the range of protected state authority overreads the Clause. Ohio and its *amici* contend that, even though "States can no longer establish preferred churches" because the Clause has been incorporated against the States through the Fourteenth Amendment, n3 "Congress is as unable as ever to contravene constitutionally permissible State [*1039] *choices regarding religious policy*." Brief for Respondents 26 (emphasis added); Brief for Commonwealth of Virginia et al. as *Amici Curiae* 6-13. That is not what the Clause says. The Clause prohibits Congress from enacting legislation "respecting an *establishment* of religion" (emphasis added); it does not prohibit Congress from enacting legislation "respecting religion" or "taking cognizance of religion." P. Hamburger, Separation of Church and State 106-107 (2002). At the founding, establishment involved "'coercion of religious orthodoxy and of financial support *by force of law and threat of penalty*,'" Newdow, supra, at 52, 159 L. Ed. 2d 98, 124 S. Ct. 2301 (THOMAS, J., concurring in judgment) (quoting Lee, supra, at 640-641, 120 L. Ed. 2d 467, 112 S. Ct. 2649 (SCALIA, J., dissenting, in turn citing L. Levy, The Establishment Clause [**34] 4 (1986))), including "'governmental preferences for *particular* religious faiths,'" 542 U.S., at 53, 159 L. Ed. 2d 98, 124 S. Ct. 2301 (quoting Rosenberger v. Rector and Visitors of Univ. of Va., 515 U.S. 819, 856, 132 L. Ed. 2d 700, 115 S. Ct. 2510 (1995) (THOMAS, J., concurring)). In other words, establishment at the founding involved, for example, mandatory observance or mandatory payment of taxes supporting ministers. See 542 U.S., at 52, 159 L. Ed. 2d 98, 124 S. Ct. 2301 (THOMAS, J., concurring in judgment); Lee, supra, at 640-641, 120 L. Ed. 2d 467, 112 S. Ct. 2649 (SCALIA, J., dissenting); McConnell 2131; Levy, The Establishment Clause 10 (2d ed. 1994). To proscribe Congress from making laws "respecting an establishment of religion," therefore, was to forbid legislation respecting coercive state establishments, not to preclude Congress from legislating on religion generally.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Ohio claims the benefit of the federalism aspect of the Clause, yet simultaneously adheres to the view that the Establishment Clause was incorporated against the States through the Fourteenth Amendment. Brief for Respondents 25-26. These positions may be incompatible. The text and history of the Clause may well support the view that the Clause is not incorporated against the States precisely because the Clause shielded state establishments

from congressional interference. <u>Elk Grove Unified School Dist.</u> v. <u>Newdow, 542 U.S. 1, 50-51, 159 L. Ed. 2d 98, 124 S. Ct. 2301</u> (THOMAS, J., concurring in judgment). I note, however, that a state law that would violate the incorporated <u>Establishment Clause</u> might also violate the <u>Free Exercise Clause</u>. <u>Id., at 53, n. 4, 54, n. 5, 159 L. Ed. 2d 98, 124 S. Ct. 2301</u>.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**35]

History, at least that presented by Ohio, does not show that the Clause hermetically seals the Federal Government out of the field of religion. Ohio points to, among other things, the words of James Madison in defense of the Constitution at the Virginia Ratifying Convention: "There is not a shadow of right in the general government to intermeddle with religion. Its least interference with it would be a most flagrant usurpation." General Defense of the Constitution (June 12, 1788), reprinted in 11 Papers of James Madison 130 (R. Rutland, C. Hobson, W. Rachal, & J. Sisson eds. 1977). Ohio also relies on James Iredell's statement discussing the Religious Test Clause at the North Carolina Ratifying Convention:

"[Congress] certainly [has] no authority to interfere in the establishment of any religion whatsoever . . . . Is there any power given to Congress in matters of religion? Can they pass a single act to impair our religious liberties? If they could, it would be a just cause of alarm . . . . If any future Congress should pass an act concerning the religion of the country, it would be an act which they are not authorized to pass, by the Constitution, and which the people would [**36] not obey." Debate in North Carolina Ratifying Convention (June 30, 1788), in 5 Founders' Constitution 90 (P. Kurland & R. Lerner eds. 1987).

[*1040] These quotations do not establish the Framers' beliefs about the scope of the <u>Establishment Clause</u>. Instead, they demonstrate only that some of the Framers may have believed that the National Government had no authority to legislate concerning religion, because no enumerated power gave it that authority. Ohio's Spending Clause and Commerce Clause challenges, therefore, may well have merit. See n. 2, *supra*.

In any event, Ohio has not shown that the <u>Establishment Clause</u> codified Madison's or Iredell's view that the Federal Government could not legislate regarding religion. An *unenacted* version of the Clause, proposed in the House of Representatives, demonstrates the opposite. It provided that "Congress shall make no laws touching religion, or infringing the rights of conscience." 1 Annals of Cong. 731 (1789); see also <u>Wallace</u> v. <u>Jaffree, 472 U.S. 38, 96-97, 86 L. Ed. 2d 29, 105 S. Ct. 2479 (1985)</u> (REHNQUIST, J., dissenting). The words ultimately adopted, "Congress shall make no law respecting an establishment of religion," "identified a position from [**37] which [Madison] had once sought to distinguish his own," Hamburger, *supra*, at 106. Whatever he thought of those words, "he clearly did not mind language less severe than that which he had [previously] used." *Ibid.* The version of the Clause finally adopted is narrower than Ohio claims.

Nor does the other historical evidence on which Ohio relies -- Joseph Story's Commentaries on the Constitution -- prove its theory. Leaving aside the problems with relying on this source as an indicator of the original understanding, see <u>U.S. Term Limits, Inc.</u> v. <u>Thornton, 514 U.S. 779, 856, 131 L. Ed. 2d 881, 115 S. Ct. 1842 (1995)</u> (THOMAS, J., dissenting), it is unpersuasive in its own right. Justice Story did say that "the whole power over the subject of religion is left exclusively to the state governments, to be acted upon according to their own sense of justice, and the state constitutions." Commentaries on the Constitution of the United States 702-703 (1833) (reprinted 1987). In context, however, his statement concerned only Congress' inability to legislate with respect to religious *establishment*. See *id.,* at 701 ("The real object of the amendment was . . . to prevent any national ecclesiastical [**38] establishment, which should give to an hierarchy the exclusive patronage of the national government"); *id.,* at 702 ("It was deemed advisable to exclude from the national

government all power to act upon the subject . . . . It was impossible, that there should not arise perpetual strife and perpetual jealousy on the subject of ecclesiastical ascendancy, if the national government were left free to create a religious establishment").

In short, the view that the Establishment Clause precludes Congress from legislating respecting religion lacks historical provenance, at least based on the history of which I am aware. Even when enacting laws that bind the States pursuant to valid exercises of its enumerated powers, Congress need not observe strict separation between church and state, or steer clear of the subject of religion. It need only refrain from making laws "respecting an establishment of religion"; it must not interfere with a state establishment of religion. For example, Congress presumably could not require a State to establish a religion any more than [*1041] it could preclude a State from establishing a religion.

II

On its face -- the relevant inquiry, as this is a facial challenge [**39] -- RLUIPA is not a law "respecting an establishment of religion." RLUIPA provides, as relevant: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person," first, "furthers a compelling governmental interest," and second, "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §§ 2000cc-1(a)(1)-(2). This provision does not prohibit or interfere with state establishments, since no State has established (or constitutionally could establish, given an incorporated Clause) a religion. Nor does the provision require a State to establish a religion: It does not force a State to coerce religious observance or payment of taxes supporting clergy, or require a State to prefer one religious sect over another. It is a law respecting religion, but not one respecting an establishment of religion.

In addition, RLUIPA's text applies to all laws passed by state and local governments, including "rules of general applicability, [**40] " ibid., whether or not they concern an establishment of religion. State and local governments obviously have many laws that have nothing to do with religion, let alone establishments thereof. Numerous applications of RLUIPA therefore do not contravene the Establishment Clause, and a facial challenge based on the Clause must fail. See United States v. Booker, 543 U.S. __, __, 160 L. Ed. 2d 621, 125 S. Ct. 738 (2005) (THOMAS, J., concurring in part and dissenting in part); United States v. Salerno, 481 U.S. 739, 745, 95 L. Ed. 2d 697, 107 S. Ct. 2095 (1987).

It also bears noting that Congress, pursuant to its Spending Clause authority, conditioned the States' receipt of federal funds on their compliance with RLUIPA. § 2000cc-1(b)(1) ("This section applies in any case in which . . . the substantial burden is imposed in a program or activity that receives Federal financial assistance"). As noted above, n. 2, supra, RLUIPA may well exceed the spending power. Nonetheless, while Congress' condition stands, the States subject themselves to that condition by voluntarily accepting federal funds. The States' voluntary acceptance of Congress' condition undercuts Ohio's argument that Congress is encroaching [**41] on its turf.

**REFERENCES:** ♦  Go To Full Text Opinion

♦  Go To Supreme Court Brief(s)

♦  Go To Supreme Court Transcripts